# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br>611 Pennsylvania Ave SE #231<br>Washington, D.C. 20003<br><br>   *Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF DEFENSE,<br>1155 Defense Pentagon<br>Washington, DC 20301-1155<br><br>   *Defendant.* | Civil Action No.: 24-964 |

## COMPLAINT

1.  Plaintiff America First Legal Foundation (AFL) brings this action against the Department of Defense, to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Additionally, it may grant declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*.

3.  Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

4. The Plaintiff, AFL, is a nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States. AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, all to educate the public.

5. The Defendant, the Department of Defense, is an agency under 5 U.S.C. § 552(f), with its headquarters at 1000 Defense Pentagon, Washington DC.

6. The Defendant has possession, custody, and control of the requested records.

## BACKGROUND

7. In October 2014, Russian hackers allegedly breached the Executive Office of the President's (EOP) network. Russell Berman, *Did Russia Just Hack the White House?* THE ATLANTIC (Oct. 29, 2014), https://bit.ly/3Y0WO8r. Six months later, reports suggested that the White House's unclassified network, which served the entire Executive Office of the President (EOP), had been compromised. Evan Perez, *How the U.S. Thinks Russians Hacked the White House*, CNN (Apr. 8, 2015), https://cnn.it/3Suoi5h.

8. In March 2015, former President Obama established a White House Information Technology Director and an Executive Committee for Presidential Information Technology (PITC). Presidential Memorandum — Establishing the Director of White House Information Technology and the Executive Committee for Presidential Information Technology (Mar. 19, 2015), https://bit.ly/3Kzl9is [hereinafter "PITC Memo"].

9. One Executive Committee member is the Director of the White House Military Office, a component of the Department of Defense. *See* Ex. 1 at 2.

10. The PITC Memo directs the Defense Secretary to designate or appoint a White House Technology Liaison for the White House Communications Agency and provides that all records created or received by the EOP be stored on systems held at the Department of Defense. *Id*.

11. The PITC Memo created the legal fiction that, although the Department of Defense physically possessed records, they were subject to the President's exclusive control. *Id*.

12. It stated, "[n]othing in this memorandum may be construed to delegate the ownership, or any rights associated with ownership, of any information resources or information systems, nor of any record, to any entity outside of the EOP." *Id*. Notably, because the PITC Memo relies upon definitions of information systems and information technology referenced in section 3502 of Title 44 of the United States Code, it may be construed to effectuate presidential control over all EOP records,

which would include components within the EOP subject to FOIA, *e.g.*, the Office of Management and Budget or the U.S. Trade Representative. *Id.*

13. AFL's FOIA request sought access to records reflecting whether the Department of Defense, through its Defense Information Systems Agency or any other component, relied on PITC to preserve records that the President of the United States accessed. Ex. 1 at 4.

14. Evidence produced in litigation against the Obama administration reveals how, in the lead-up to President Obama creating PITC, the White House relied on the Department of Defense to host White House data yet deemed this information to constitute Presidential records despite being in a federal agency's possession. This determination by the Obama administration is reflected in a declaration from a Department of Defense official made in the course of the aforementioned litigation: "in late 2010, the Army Materiel Command (AMC) entered into an agreement with the Executive Office of the President (EOP) to provide certain information and technology support to EOP." Decl. of Dr. Sherry R. Sarratt ¶ 5, *Cause of Action Institute v. Army*, (D.D.C. filed Aug. 10, 2018) (No. 16-1020) (available at https://bit.ly/3U0Usrb).

15. Under the aforementioned agreement, the White House directed that "AMC must 'refrain from deleting or modifying any EOP data without express, written direction from EOP." *Id.* 8. The government stated, "At no time was EOP data integrated into any other Army records or files, as the data remained partitioned off exclusively for EOP use." *Id.* This 2010 White House agreement, like the 2015

PITC Memo, applies the Presidential Records Act to all EOP data located on Department of Defense servers. *See* Memorandum of Agreement Between Executive Office of the President Office of Administration (EOP) and the United States Army Materiel Command (AMC) (available at https://bit.ly/4aiRSTj).

16. Given this factual background, AFL's present FOIA request raises important legal questions. First, in the superseding indictment by the Special Counsel team against former President Trump, it was alleged that "TRUMP was not authorized to possess or retain those classified documents." Superseding Indictment ¶ 4, *United States v. Trump*, (S.D. Fla. July 27, 2023) (No. 23-80101) [hereinafter "SCO Indictment"]. The PITC Memo complicates this allegation because it creates the presumption of the President's "exclusive control" of information provided to him. PITC Memo, *supra*. In other words, the former President may have believed that such exclusive control gave him authority to retain certain documents. Second, the superseding indictment alleged 32 counts of the former President's violating 18 U.S.C. § 793(e). SCO Indictment ¶¶ 92–93. Section 793(e) requires that the former President had "unauthorized possession of" documents related to the national defense. 18 U.S.C. § 793(e). But if such documents were covered by the PITC framework, such possession may have been reasonably authorized in the mind of the former President.

17. Beyond questions surrounding how the PITC framework affected the intent of the former President concerning documents he received are questions regarding what documents are preserved by the Department of Defense. For instance,

the Special Counsel charged the former President with violations of 18 U.S.C. § 1512(c)(1) for allegedly removing official records. SCO Indictment ¶ 100–01. However, if such documents are preserved on Department of Defense servers, then arguably no records removal occurred, or, alternatively, the records are still available to the federal government.

18.   A further issue concerns the boxes of documents the former President provided from his home in Mar-a-Lago to the National Archives and Records Administration. Based upon its inspection of those records, the National Archives decided that classified information may have been possessed illegally and made a referral to the Department of Justice. That referral informed the Special Counsel's case in the Southern District of Florida. However, if the originals of those records are in the possession of the Department of Defense (due to PITC), it would mean the records at Mar-a-Lago — or at least some of them — were mere copies of actual Presidential records and thus excluded from the Presidential Records Act. The Act's definition of "Presidential records" excludes "extra copies of documents produced only for convenience of reference, when such copies are clearly so identified." 44 U.S.C. § 2201(2)(B). In this light, the PITC Memo may be the basis for identifying such records as additional copies. If some portion of the records retrieved from Mar-a-Lago and maintained by the Archives were not, in fact, Presidential records, then the National Archives not only obtained those records without legal authority but also may have engaged in significant misfeasance in making a referral to the Department of Justice.

19. AFL's FOIA request also raises important questions about what information accessed by the President or his staff is in the possession of the Department of Defense. If the Department of Defense not only stores and manages records on behalf of the President but also controls whether such records are preserved, then records once thought to be Presidential records may be agency records subject to the Freedom of Information Act. And if the PITC Memo is construed to reflect a President's intent to retain control over records in the possession of the Department of Defense, then the lawfulness of such a memorandum may be a relevant legal question.

## AFL'S FOIA REQUEST

20. On January 24, 2024, AFL submitted a FOIA request to the Defense Information Systems Agency, directly addressed to the Requester Service Center for that Department of Defense Component. Ex. 1; *see* 32 C.F.R. § 286.3(a).

21. AFL requested records showing that the Defense Information Systems Agency had a system to preserve records that were accessed by the President. *Id.* at 4.

22. The timeframe for the requested records is from December 31, 2020, to January 21, 2021. *Id.*

23. AFL requested a public interest fee waiver. *Id.* at 5.

24. On March 15, 2024, the Defendant acknowledged the request. Ex. 2.

25. The Defendant assigned the request tracking number "FOIA 24-87." *Id.*

26. As of the date of this filing, the Defendant has not released any responsive records to AFL.

## CLAIM FOR RELIEF

### Violation of the FOIA, 5 U.S.C. § 552

27. AFL repeats paragraphs 1–26.

28. AFL properly requested records within the possession, custody, and control of the Defendant.

29. The Defendant failed to conduct searches for responsive records.

30. Moreover, because the Defendant failed to conduct searches, it has failed to disclose any segregable, non-exempt portions of responsive records. *See* 5 U.S.C. § 552(b).

31. The Defendant has failed to respond to AFL's requests within the statutory time period. *See* 5 U.S.C. § 552(a)(6).

32. Accordingly, AFL has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

33. The Defendant has violated the FOIA by failing to reasonably search for records responsive to AFL's FOIA request and release nonexempt records within the prescribed time limit.

## PRAYER FOR RELIEF

WHEREFORE, AFL respectfully requests that this Court:

i. Declare that the records sought by AFL's request must be disclosed pursuant to 5 U.S.C. § 552;

ii. Order the Defendant to search immediately, demonstrating search methods reasonably likely to lead to the discovery of responsive records;

iii. Order the Defendant to produce by a date certain all non-exempt records responsive to AFL's FOIA request, accompanied by a Vaughn index of any responsive records or portions of responsive records being withheld under a claim of exemption;

iv. Order the Defendant to grant AFL's requests for fee waivers;

v. Award AFL attorneys' fees and costs incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

vi. Grant AFL such other and further relief as this Court deems proper.

Date: April 4, 2024

Respectfully Submitted,

/s/ Jacob Meckler_____
Daniel Z. Epstein (D.C. Bar No. 1009132)
Michael Ding (D.C. Bar No. 1027252)
Jacob P. Meckler (D.C. Bar No. 90005210)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003
(202) 964-3721
Daniel.Epstein@aflegal.org
Michael.Ding@aflegal.org
Jacob.Meckler@aflegal.org

*Counsel for the Plaintiff*
*America First Legal Foundation*