# EXHIBIT 1



January 24, 2024

**Via email** – disa.meade.gc.mbx.foia@mail.mil
Defense Information Systems Agency
ATTN: Headquarters FOIA Requester Service Center
P.O. Box 549
Ft Meade, MD  20755-0549

**Freedom of Information Act Request: PITC**

Dear FOIA Officer:

America First Legal Foundation ("AFL") is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans, all to promote public knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills to turn raw materials into distinct work, we distribute that work to a national audience through traditional and social media platforms. AFL's X account has over 207,600 followers, the X account of our Founder and President has over 571,000 followers, and our Facebook page has 199,000 followers.

I. **To cover up Russian hacking, President Obama created a new presumption in presidential records: those received by the President are in his exclusive control.**

In October 2014, hackers believed to be working for the Russian government succeeded in breaching the unclassified network of the Executive Office of the President, which includes the White House Office in addition to agencies like the Office of Management and Budget.[1] Six months later, reports indicative of another breach disclosed that the White House's unclassified network, which served the entire

---

[1] Russell Berman, *Did Russia Just Hack the White House?* THE ATLANTIC (Oct. 29, 2014), https://bit.ly/3Y0WO8r.

Executive Office of the President (EOP), had been compromised.[2] In between these reports, former president Obama established, via executive action, a White House Information Technology Director and an Executive Committee for Presidential Information Technology (PITC).[3] One Executive Committee member is the Director of the White House Military Office, which is a component of the U.S. Department of Defense (DoD). The memorandum makes clear that the Defense Secretary shall designate or appoint a White House Technology Liaison for the White House Communications Agency. This memorandum required that all records created or received by the EOP be stored on systems held at the DoD. The PITC memorandum created the legal fiction that although records were physically possessed by DoD, they were subject to the President's exclusive control.

## II. Because of President Obama's executive action, President Trump could reasonably have concluded that all information provided to him in office was within his exclusive control.

The PITC memorandum purported to establish "the President's **exclusive control** of the information resources and information systems provided to the President, Vice President and EOP."[4] To emphasize this notion of control, the memorandum stated, "[n]othing in this memorandum may be construed to delegate the ownership, or any rights associated with ownership, of any information resources or information systems, nor of any record, to any entity outside of the EOP." The memorandum thus made clear that records sent to EOP systems or records originating on those systems are controlled by the President. Notably, because the PITC memorandum relies upon definitions of information systems and information technology referenced in section 3502 of Title 44 of the United States Code, it effectuates presidential control over all EOP records, which would include components subject to FOIA, e.g., the Office of Management and Budget or the U.S. Trade Representative.

## III. Evidence disclosing the PITC system may be favorable to former President Trump, yet the Government may have failed to disclose it.

Federal prosecutors have a duty to learn of "any" favorable evidence known to others acting on the government's behalf.[5] Under what is known as *Brady* obligations, prosecutors have an affirmative duty to reveal any evidence material to guilt or punishment.[6] This duty to disclose sources of exculpatory evidence extends to

---

[2] Evan Perez, *How the U.S. Thinks Russians Hacked the White House*, CNN (Apr. 8, 2015), https://cnn.it/3Suoi5h.
[3] Presidential Memorandum – Establishing the Director of White House Information Technology and the Executive Committee for Presidential Information Technology (Mar. 19, 2015), https://bit.ly/3Kzl9is.
[4] *Id.*, (emphasis added).
[5] *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).
[6] *Smith v. Sec'y, Dep't of Corr.*, 2006 WL 4495336, at *2 (11th Cir. Dec. 27, 2006) (per curiam).

evidence beyond the files maintained by the prosecutor's office but also "other branches of government closely aligned with the prosecution."[7]

On June 8, 2023, Special Counsel Jack Smith's team issued an indictment against former President Trump, followed by a superseding indictment on July 27, 2023.[8] The indictment claims "Trump was not authorized to possess or retain . . . classified documents."[9] But the former President's compliance with President Obama's PITC memorandum may have created a reasonable belief in President Trump that he, in fact, had such authority. Indeed, the indictment discusses "Classified Information" with reference to a series of Executive Orders but noticeably fails to disclose the obvious ways President Obama's PITC memorandum could change reasonable presumptions or beliefs concerning the ownership and control of information received by the President.

The first 32 counts of the superseding indictment charge violations of 18 U.S.C. § 793(e). Section 793(e) requires that Trump had "unauthorized possession of [a document] relating to the national defense[.]" But if the relevant documents were subject to the scope of PITC, then Trump, pursuant to the memorandum, had exclusive control over the document he received, as opposed to the EOP or any other part of the Federal Government. The PITC memorandum arguably establishes exclusive control of EOP documents in the person of the President.

Additional counts were brought pursuant to 18 U.S.C. § 1512. Section 1512(c)(1) was charged on the theory that President Trump destroyed records with "the intent to impair the object's . . . availability for use in an official proceeding." If, however, any relevant document was subject to the PITC memorandum, then its availability has been unaffected, and it remains in the possession of the United States federal government. Additionally, in order to establish that President Trump destroyed these records with the intent to impair their availability, the United States would need to show that President Trump believed his copies to be the only ones in existence.

Evidence concerning PITC is further relevant to whether Trump met the *mens rea* standard of 18 U.S.C. § 1519, which requires that Trump "knowingly" "alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record." Such knowledge would not exist if the record was subject to the PITC memorandum, as the President would have known such a record was within his exclusive control and, therefore, not a record belonging to the United States. What records relevant to the indictment were subject to the PITC memorandum is thus also relevant to the *mens rea* requirements of charges under 18 U.S.C. §§ 1001(a)(1) and (a)(2).

---

[7] *United States v. Safavian*, 233 F.R.D. 12, 17 (D.D.C. 2005).
[8] Superseding Indictment, *United States v. Trump*, No. 9:23-cr-80101, (S.D. Fla. July 27, 2023).
[9] Id. at ¶¶ 92-93.

Because, under the PITC memorandum, all documents and communications sent or received on the EOP's networks are stored and managed by the DoD on behalf of the President, the physical destruction or removal of a record governed by the PITC typically would not remove it from the custody of the United States government, as the DoD copy would remain. Indeed, the PITC memorandum creates PITC Director's duty to "ensure the effective use of information resources and information systems provided to the President" "and shall have the appropriate authority to promulgate all necessary procedures and rules governing these resources and systems." The PITC Director's opinion as to what records received by Trump were subject to the memorandum is crucially relevant to the former President's potential culpability.

On the other hand, the Presidential Records Act specifically excludes from its scope "extra copies of documents produced only for convenience of reference, when such copies are clearly so identified." Further, any document produced to the President subject to the PITC may constitute the creation of records that were not presidential records, as the originals are held by PITC, the copies provided to President Trump were mere copies, excluded from the definition in the Act. If true, then disclosure is necessary to the extent it would tend to show that the National Archives and Records Administration had no authority to make referrals to law enforcement over records that were not subject to its jurisdiction.

## IV.   America First Legal is Legally Entitled to the Records

Normally, as a legal matter, records subject to the president's reservation of control are not federal records subject to FOIA. However, the President cannot convert federal records into presidential records to avoid transparency obligations, notwithstanding the extent to which that legal fiction may govern a president's interpretation of the law or legal liability. Records subject to the DoD's search, review, preservation, and production are federal records disclosable under FOIA.

## V.   Requested Records

In order to ensure records subject to FOIA are not improperly kept from the public, we request access to the following records, which shall be processed as "simple track":

- Any record that tends to show the existence of a practice of DoD preservation of records whose copies were accessed by the President.

The timeframe for this request is from December 31, 2020, to January 21, 2021.

## VI.     Request for a Public Interest Fee Waiver

We request a waiver of all applicable fees. FOIA and applicable regulations provide that the agency shall furnish requested records without or at a reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[10]

In this case, a fee waiver is appropriate because of the public's right to obtain clarity as to the scope and limits of PITC's authority.[11] To date, the information requested has not been released in any form to the public; its release in response to this request will, therefore, contribute significantly to public understanding of the operations of the government. In addition, as America First Legal is a non-profit, tax-exempt organization as defined by the Internal Revenue Code, it has no commercial interest in making this request.

## VII.    Record Preservation Requirement

We request that the disclosure officer responsible for the processing of this request issue an immediate hold on all records responsive, or potentially responsive, to this request so as to prevent their disposal until such time as a final determination has been issued on the request and any administrative remedies for appeal have been exhausted. It is unlawful for an agency to destroy or dispose of any record subject to a FOIA request.[12]

## VIII.   Record Production and Contact Information

In an effort to facilitate document review, please provide the responsive documents in electronic form in lieu of a paper production. Alternatively, please provide responsive records in native format or in PDF format on a USB drive to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, DC 20003. If a certain portion of responsive records can be produced more readily, we request that those records be produced first and the remaining records be produced on a rolling basis as circumstances permit.

---

[10] 5 U.S.C. § 552(a)(4)(A)(iii); *see also Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115-19 (D.C. Cir. 2015) (discussing proper application of public-interest fee waiver test).

[11] *See e.g. Am. Oversight v. United States HHS*, 380 F. Supp. 3d 45, 48 (D.D.C. 2019).

[12] *See* 36 C.F.R. § 1230.3(b) ("Unlawful or accidental destruction (also called unauthorized destruction) means . . . disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records."); *Chambers v. Dep't of the Interior*, 568 F.3d 998, 1004-05 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under the FOIA or the Privacy Act."); *Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 41-44 (D.D.C. 1998).

If you have any questions about this request, please contact us by e-mail at FOIA@aflegal.org. Thank you for your attention to this matter.

Thank you in advance for your cooperation.

Sincerely,

<u>/s/ *Daniel Z. Epstein*</u>
Daniel Z. Epstein
America First Legal Foundation

6